IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SEAN ALEXANDER HARRIS,<br>Movant,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br>Respondent. | NO.   4:22-CV-214-O<br>(4:20-CR-305-O) |

### RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Sean Harris is fortunate. Despite being the leader of a methamphetamine distribution conspiracy and having a guideline range of 240 months, the government agreed to and the Court accepted a downward-variance sentence of 144 months. (*See* Sent. Tr. at 3-4, 5-6; CR 56 at 1, 3.)[1] Nonetheless, he has filed a motion under 28 U.S.C. § 2255 contending that he was the victim of ineffective assistance by his attorney. (CV 3.) The motion should be summarily denied because his claims are wholly conclusory.

### STATEMENT OF THE CASE

In March 2020, investigators began looking into Harris's drug-dealing activities based on suspicious mailings he made from the Dallas/Fort Worth area. (PSR ¶ 10.) They determined that Harris had been obtaining methamphetamine, marijuana, and other drugs from sources in California and, along with his mother, resold those drugs using the

---

[1] The government cites documents in the underlying criminal proceedings, *United States v. Harris*, No. 4:20-CR-305-O, by docket entry number as "CR [#]." Documents filed in the instant civil proceedings are cited by docket entry number as "CV [#]." In a few instances, such as the presentence investigation report and hearings transcripts from the criminal proceedings, the government cites by reference to the document title.

1

"dark web" Internet. (*Id.*)  The investigation identified more than 8,000 suspicious mailings. (*Id.*)  Several packages were intercepted between March and September 2020 and were found to contain controlled substances. (PSR ¶ 12.)

A grand jury issued an indictment charging Harris with conspiracy to possess methamphetamine with intent to distribute. (CR 15.)  He entered into a written plea agreement whereby he pled guilty to that same charge brought in a superseding information that also contained forfeiture provisions for about $26,000. (*See* CR 22; CR 25; CR 26.)  Due to the government's decision not to charge a threshold quantity of methamphetamine, Harris was subject to a punishment range of up to 20 years, with no mandatory minimum sentence. (*See* CR 26 at 2.)

The PSR determined that Harris was accountable for a total converted drug weight of 486,905 kilograms. (PSR ¶ 30.)  That placed him in base offense level 38 under USSG § 2D1.1. (PSR ¶ 36.)  The PSR added two levels for maintaining a premises for drug distribution and subtracted three levels for acceptance of responsibility, yielding a total offense level of 37. (PSR ¶¶ 37-45.)  That, combined with his criminal history category of II, produced an advisory imprisonment range of 235 to 293 months, which was then truncated by the statutory maximum to 235 to 240 months. (PSR ¶ 94.)

Harris's attorney made three objections to the PSR. (CR 40.)  He objected to a criminal history point (although it did not change the guideline range), the enhancement for maintaining a premises, and the absence of a "safety valve" reduction.  If the Court had granted the latter two objections, his range would have been 151 to 188 months. (CR 40 at 1.)  The government, however, explained why those objections should be overruled.

(CR 41.)  A subsequent addendum to the PSR did not accept Harris's objections and added a two-level enhancement based on Harris's leadership role in the conspiracy, elevating the guidelines range to the statutory cap of 240 months.  (CR 42-1.)  Harris's attorney objected to that enhancement as well.  (CR 46.)  Harris's attorney also moved for a downward-variance sentence based largely on his childhood trauma, mental health issues, and elevation of the guidelines range based the purity levels of the methamphetamine he distributed.  (CR 44.)

The Court was prepared to conduct a sentencing hearing when the case was called on April 22, 2021.  (*See* Sent. Tr.)  When called upon to present evidence in support of his PSR objections, however, Harris's attorney informed the Court of a proposed agreement with the government to recommend a downward-variance sentence of 12 years.  (*Id.* at 3-4.)  After inquiring about the implications of that agreement, the Court indicated that it would accept that recommendation.  (*Id.* at 4-5.)  Harris was given an opportunity to allocute, and he used that time to simply thank the Court for accepting the recommended sentence.  (*Id.* at 5.)  The Court then memorialized its decision to impose a downward-variance sentence of 12 years.  (*Id.* at 5-6.)

The Court entered its judgment on April 22, 2021.  (CR 55.)  Harris did not file a notice of appeal, meaning that his judgment became final 14 days later on May 6, 2021.  Under 28 U.S.C. § 2255(f)(1), therefore, he had until May 6, 2022 to file a motion challenging his conviction or sentence.  On March 24, 2022, Harris timely filed his first motion.  (*See* CV 1.)

3

## ARGUMENT AND AUTHORITIES

### Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. It provides four grounds for relief: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A 1981). And it "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

Section 2255 is "reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice." *Capua*, 656 F.2d at 1037. In other words, the "scope of relief under § 2255 is consistent with that of the writ of habeas corpus." *Placente*, 81 F.3d at 558.

To obtain relief under Section 2255 based on a claim that counsel was ineffective, a movant must satisfy the two-pronged test established in *Strickland v. Washington*, 466

U.S. 668 (1984). First, he must prove that counsel's performance was deficient by pointing to specific acts or omissions that were not the result of reasonable professional judgment. *Id.* at 687, 690. Second, he must prove prejudice by establishing that "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Stated another way, he must prove that but for counsel's unprofessional errors, "there is a reasonable probability" that the result of the proceeding would have been different. *Strickland*, 466 U.S. at 693-94. "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and a movant's inability to satisfy either prong dooms his claim in its entirety, *see United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).

Section 2255 motions do not automatically require a hearing. *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings. "When the files and records of a case make manifest the lack of merit of a Section 2255 claim, the trial court is not required to hold an evidentiary hearing." *Hughes*, 635 F.2d at 451. A prisoner is not entitled to an evidentiary hearing on his Section 2255 motion unless he "presents 'independent indicia of the likely merit of [her] allegations.'" *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013) (alteration brackets omitted).

### Discussion

The Fifth Circuit and this Court have made clear that a conclusory claim that counsel was ineffective fails to raise a constitutional issue. *See, e.g.,* U*nited States v.*

5

*Demik,* 489 F.3d 644, 646-47 (5th Cir. 2007); *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000); *Suarez v. Lumpkin*, No. 4:21-CV-147-O, 2022 U.S. Dist. LEXIS 10347, at *8 (N.D. Tex. Jan. 20, 2022).  A Section 2255 movant must, among other things, "state the facts supporting each ground."  Rule 2(b)(2) of Rules Governing Section 2255 Proceedings for the U.S. District Courts.

Harris's motion should be denied because it is entirely conclusory and fails to allege any facts supporting his numerous claims of ineffectiveness.  His memorandum is simply what appears to be a boilerplate laundry list of things he asserts his attorney did or failed to do: failed to investigate, failed to apprise Harris of unspecified facts, misled Harris about unspecified vital case information, rendered half-hearted performance, failed to explain PSR objections, failed to properly present "the plea document," failed to adequately consult with Harris, exhibited a desire for a speedy disposition of the case, intentionally gave inaccurate and misleading advice, and the list goes on.  (*See* CV 3.)

After reviewing the motion, memorandum in support, and Harris's declaration, the only *facts* the government can glean about Harris's claims that counsel did not visit Harris as frequently as he apparently wanted and did not explain the PSR process to Harris's understanding.  (*See* CV 2.)  These allegations simply do not allege a claim for ineffectiveness.

The conclusory nature of Harris's claims is evident from the absence of any facts explaining why his attorney performed deficiently or how that deficient performance resulted in any prejudice.  For example, Harris's allegation that counsel failed to investigate is simply that: "Counsel failed to investigate."  (CV 3 at 4.)  He does not

6

allege any facts about what counsel should have investigated, what that investigation would have revealed, or explain why that additional investigation would have changed the outcome of the case. *See United States v. Fields*, 761 F.3d 443, 461 (5th Cir. 2014) ("[A] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." (emphasis added)). Similarly, Harris's claims that counsel misled or lied to him do not even specify the subject matter of the purported misinformation or deception, much less detail what that information was, how it misled Harris, or how it was material to Harris's decision to plead guilty to an offense capped at 20 years rather than face the possibility of a trial on charges carrying a much higher maximum sentence *plus* the possibility of a mandatory minimum sentence.[2] Harris's motion contains no specificity with respect to any of his claims, and his motion is subject to summary denial for that reason alone.

  Moreover, Harris's assertions of prejudice are unmeritorious. In similar conclusory fashion, he claims that, had his attorney not performed deficiently in the ways he alleged, he would have either "proceeded to trial or sought the most favorable plea offer." (CV 3 at 4.) That falls far short of showing a reasonable probability of prejudice. *See United States v. Valdez*, 973 F.3d 396, 402-03 (5th Cir. 2020) (citing *Hill v. Lockhart*,

---

[2] The government notes that the PSR recorded more than one kilogram of Ice seized from Harris and his coconspirator mother. (PSR ¶ 29.) Had the government proved at trial that Harris knowingly participated in a conspiracy involving more than half that much, he would have been subject to a *minimum* ten-year sentence and a statutory maximum of life. *See* 21 U.S.C. § 841(b)(1)(A)(viii).

7

474 U.S. 52, 59 (1985)).  First, he does not insist that he would have gone to trial, let alone support such an assertion with contemporaneous evidence as he must to prevail under *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).  *See Valdez*, 973 F.3d at 403. Second, he has not shown that there was any more favorable plea offer to be had.

Harris pled guilty to a serious drug-trafficking crime that could have been charged as an offense carrying a statutory punishment range of 10 years to life.  He received a benefit from a favorable charging decision, which capped his sentencing exposure to 20 years.  Nonetheless, his conduct and criminal history yielded an advisory guideline range at that maximum.  Yet his attorney successfully procured an agreement whereby the parties agreed to recommend a sentence that was *eight years below* that advisory range. Harris should be expressing appreciation to his lawyer for obtaining a favorable outcome instead of alleging that his performance fell below professional standards.  In any event, his conclusory claims of ineffective assistance fail.

## **CONCLUSION**

The Court should deny Harris's Section 2255 motion.

Respectfully submitted,

Chad E. Meacham
United States Attorney

*/s/ Brian McKay*
Brian McKay
Assistant United States Attorney
Texas Bar No. 24046395
1100 Commerce Street, Third Floor
Dallas, Texas 75242
Telephone: (214) 659-8600
brian.mckay@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that on May 19, 2022, I filed this response with the clerk of court for the U.S. District Court, Northern District of Texas. I also certify that a copy of this response was sent to Sean Alexander Harris, Register Number 11537-509, Texarkana FCI, P.O. Box 7000, Texarkana, Texas 75505, by certified mail.

.

>*/s/ Brian McKay*
>Brian McKay
>Assistant United States Attorney